FILED
2009 Sep-15 AM 09:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **TIMMY L. McFADDEN,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   **Civil Action No. 5:08-CV-1413-RDP** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|     **Defendant.** | ) |

**MEMORANDUM OPINION**

Timmy L. McFadden ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the Commissioner's decision is due to be reversed and this case remanded back to the Commissioner for an award of benefits.

**I.     Proceedings Below**

Plaintiff applied for a period of disability, DIB, and SSI on May 18, 2005, alleging an onset date of disability of May 16, 2005. (Tr. 50-62). Plaintiff's applications were denied initially and also upon review. (Tr. 35-38). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 40). ALJ Earl C. Cates, Jr. heard Plaintiff's case on April 6, 2007. (Tr. 41, 309-77). In his May 12, 2007 decision, the ALJ determined that Plaintiff suffers from diabetes mellitus and chronic obstructive pulmonary disease ("COPD") with emphysema which causes more than minimal limitation in Plaintiff's ability to perform basic work activities. (Tr. 19). The ALJ further

determined that Plaintiff is unable to perform any past relevant work. Although the ALJ determined Plaintiff is unable to perform any past relevant work, considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), he found Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy of which Plaintiff could perform. (Tr. 18-27). And despite limitations, the ALJ concluded that Plaintiff retains the RFC to perform less than a full range of light work, requiring a sit/stand option, and avoid being around unprotected heights or respiratory irritants. (Tr. 23). Plaintiff requested a review of the ALJ's decision. (Tr. 11-12). On June 9, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner, and subject to review by this court. (Tr. 5).

Plaintiff was born on February 12, 1964. (Tr. 110). He completed the eighth grade, as well as a truck driving school. (Tr. 128). From 1989 to 1996, Plaintiff worked as a construction-site electrician. (Tr. 76). From 1996 until May 16, 2005, his alleged onset date of disability, Plaintiff worked as a truck driver. (Tr. 121). Since January 2006, Plaintiff has been working part-time as a tow truck operator. (Tr. 66). Plaintiff alleges he suffers from several conditions that prevent him from working full-time: COPD with emphysema, high blood pressure, diabetes, arthritis in his legs, gout, and a hernia. (Tr. 120, 322).

On June 16, 1996, Plaintiff appeared at the Cullman Regional Medical Center complaining of chest pain and dizziness. (Tr. 186). He reported experiencing prior episodes of hyperventilation, chest pain, and anxiety. (*Id.*). Dr. Phillip Freeman, the treating physician, noted a family history of coronary artery disease and a personal history of smoking cigarettes (two packs per day since age 11). (Tr. 187). Chest x-rays revealed no active lung or cardiopulmonary disease, and EKGs were

normal; however, a graded exercise test (GXT) was positive with an inferior ST depression. (Tr. 182-83, 187). Dr. Freeman diagnosed Plaintiff with coronary artery disease, hypertension, hyperventilation, and hypokalemia. (Tr. 187). Dr. Freeman advised Plaintiff to lose weight, quit smoking, and prescribed a Nicotrol kit. (*Id.*). Dr. Freeman also prescribed Nitroglycerin, Toprol for blood pressure and chest pain, and Atrovent for wheezing. (*Id.*). On July 5, 1996, Plaintiff returned to the Cullman Regional Medical Center complaining of sharp pain in his lower chest. (Tr. 176). An angiograph revealed mild plaque formation in the LAD diagonal system and mild left ventricular hypertrophy. (Tr. 179). On July 30, 1996, Plaintiff again presented to the Cullman Regional Medical Center complaining of chest pain, this time in the substernal region of the chest, radiating out into his arm. (Tr. 175). Plaintiff was prescribed Xanax, Beta blockers, and ACE inhibitors. (*Id.*).

On August 7, 1996, two days after his father's funeral, Plaintiff overdosed on Xanax. (Tr. 170). When Plaintiff arrived in the emergency room, he was extremely hostile and belligerent. (*Id.*). He pulled out a knife in the hospital elevator and had to be restrained and forcibly sedated. (Tr. 170-71). A consulting psychiatrist, Dr. Donald Garcia, determined that Plaintiff was a suicide risk and recommended involuntary hospitalization at another facility. (Tr. 173). On August 22, 1996, Plaintiff experienced another episode of chest pain and sought treatment at the Bessemer Carraway Medical Center. (Tr. 136). He left against medical advice. (Tr. 137).

Plaintiff presented to the St. Clair Regional Hospital on June 30, 2002, complaining of difficulty breathing. (Tr. 157). It was noted that Plaintiff smoked one pack of cigarettes per day. (Tr. 159). The treating physician, Dr. Ogbuchi, noted that the patient was wheezing, and Dr. Embry, the radiologist, opined that there was no acute chest disease, finding clear lungs and no pleural

effusions. (Tr. 161, 164). Plaintiff returned on August 14, 2002 complaining of pain "all over." (Tr. 155). He again complained of pain on August 29, 2002, along with nausea, vomiting, diarrhea, and abdominal cramps. (Tr. 139). An x-ray was taken and appeared mostly normal, with some nonspecific pelvic calcifications on the right side. (Tr. 145).

On September 13, 2002, Plaintiff sought treatment for pain and insomnia from Dr. Helms. (Tr. 231). Dr. Helms noted that Plaintiff suffered from early COPD, gout, diabetes mellitus, and benign essential hypertension. (Tr. 231-32).

Plaintiff saw Dr. Clyde L. Holloway on October 25, 2004. (Tr. 222). Plaintiff reported that he was out of all of his medications and that he had been out of blood pressure medication for a while. (*Id.*). Plaintiff's blood pressure was elevated and he complained of right shoulder pain. (*Id.*). Plaintiff appeared alert and oriented, not short of breath at rest, and had no slurred speech. (*Id.*). Plaintiff experienced shoulder pain upon motion, but no acute tenderness. (*Id.*). Dr. Holloway assessed that Plaintiff suffered from hypertension, diabetes, and tendinitis. (*Id.*). Dr. Holloway gave Plaintiff Dexamethasone, Prednisone, and prescribed Accupril and Glucophage XR. (*Id.*). On March 14, 2005, Plaintiff returned to see Dr. Holloway. (Tr. 221). He was again out of his blood pressure medication and his blood pressure was elevated. (*Id.*). Plaintiff reported no chest pain or palpitations, but said that his blood sugar sometimes peaked at over 200. (*Id.*). Plaintiff appeared alert and oriented, he had no stiff neck, slurred speech, or facial edema. (*Id.*). Plaintiff's heart rhythm was regular and he had no carotid bruits. (*Id.*). Dr. Holloway increased Plaintiff's dose of Glucophage XR and restarted him on Accupril. (*Id.*). Plaintiff came in for a recheck on April 4, 2005. (Tr. 220). He complained of shortness of breath and wheezing, but reported no chest pain

4

with exertion. (*Id.*). He stated that he continued to smoke. (*Id.*). Dr. Holloway observed occasional wheezing, a regular heart rhythm, and no carotid bruits. (*Id.*).

On May 5, 2005, Plaintiff presented to Woodland Medical Center with complaints of worsening dyspnea (shortness of breath). (Tr. 205). The treating physician diagnosed Plaintiff with chronic bronchitis and COPD. (*Id.*). Plaintiff underwent a chest x-ray, which revealed no pneumothorax or enlargement of the lungs. (Tr. 204). His heart appeared midline with mild eventration of the right hemidiaphragm but showed no infiltrate or failure. (*Id.*). Plaintiff was in good condition upon discharge. (Tr. 205). Plaintiff returned, however, on May 16, 2005, again complaining of dyspnea. (Tr. 194). The diagnosis was COPD exacerbation and bronchitis. (*Id.*). Another chest x-ray was taken. (Tr. 196). A comparison with the May 5 x-ray yielded no finding of "acute process or change allowing for slightly improved aeration in the lower lungs." (*Id.*). Plaintiff was discharged in fair condition and instructed to quit smoking. (Tr. 194).

On May 18, 2005, Plaintiff saw Dr. Holloway with continued complaints of shortness of breath. (Tr. 219). Dr. Holloway noted that Plaintiff was slightly short of breath at rest and had some wheeze. (*Id.*). Dr. Holloway administered one cc of Dexamethasone and instructed Plaintiff to continue the medications he received at Woodland Medical Center. (*Id.*). Plaintiff saw Dr. Jeffrey W. Hawkins, a pulmonologist, on May 31, 2005. (Tr. 214). Dr. Hawkins noted that Plaintiff suffered from COPD, hypertension, arthritis, and gout. (*Id.*). Dr. Hawkins prescribed Advair and Singulair. (*Id.*).

Plaintiff returned to Dr. Holloway on June 28, 2005. (Tr. 217). Plaintiff reported continuing problems with his breathing, as well as trouble sleeping. (*Id.*). He stated that he could not continue to see Dr. Hawkins due to financial difficulty. (*Id.*). He also reported that he still smoked. (*Id.*).

Upon examination, Plaintiff appeared to have scattered wheezes, but was not short of breath at rest. (*Id*.). Dr. Holloway prescribed Vibramycin and Prednisone, recommended Mucinex, and gave Plaintiff several samples of Lunesta to help with sleep. (*Id*.). He also gave Plaintiff a course of Tussionex to alleviate his nighttime cough and "talked with [Plaintiff] again about" his smoking. (Tr. 217).

Dr. Amit V. Vora provided a consultative evaluation on August 17, 2005. (Tr. 242). Dr. Vora noted that Plaintiff had complained of shortness of breath for the last two and a half years, and that had a history of COPD, emphysema, and bronchitis. (*Id*.). Plaintiff told Dr. Vora that he quit working after experiencing dizzy spells when coughing and shortness of breath. (*Id*.). Plaintiff disclosed that he began smoking cigarettes at the age of six and that he continues to smoke one pack per day, but that he was trying to quit. (*Id*.). Based on Plaintiff's history, laboratory data and physical examination, Dr. Vora concluded that Plaintiff was a chronic heavy smoker who suffered from moderately severe COPD, diabetes, uncontrolled hypertension, and depression due to unemployment and financial problems. (Tr. 243). Dr. Vora partly attributed Plaintiff's headaches and dizziness to uncontrolled blood pressure. (*Id*.). He noted that Plaintiff had been losing weight recently. (*Id*.).

Dr. Holloway saw Plaintiff on several occasions from January 26, 2005 until May 11, 2006. (Tr. 270-73). On January 26, 2006, Plaintiff complained of dizzy spells. (Tr. 273). He had shortness of breath and good motion in his extremities. (*Id*.). Dr. Holloway adjusted Plaintiff's medications. (*Id*.). On February 27, 2006, Plaintiff complained of pain in his legs, ankles, and shoulders, which had been going on "for a long time." (Tr. 272). Upon examination, Plaintiff was again short of breath. (*Id*.). Plaintiff stated that he was smoking less than one pack of cigarettes per

day and was trying to cut down. (*Id*.). In his treatment plan, Dr. Holloway indicated that Plaintiff should stop smoking. (*Id*.). On May 8, 2006, Plaintiff returned to Dr. Holloway with complaints of wheezing and fatigue. (Tr. 271). Plaintiff admitted that he was "not checking his blood sugars like he should" and continued to smoke despite medical advice to the contrary. (*Id*.). Objectively, Plaintiff was found to have no stiff neck or shortness of breath at rest, and a normal heart rhythm. (*Id*.). Plaintiff did have "fairly diffuse wheezes." (*Id*.). Plaintiff's abdomen was not acutely tender, but Dr. Holloway noted that there was "a lot of obesity present." (*Id*.). Plaintiff's finger stick glucose was 365. (*Id*.). Dr. Holloway spoke to Plaintiff about the "perks of quitting smoking and changing his eating patterns." (Tr. 271). On May 11, 2006, Plaintiff returned for a recheck. (Tr. 270-71). Plaintiff reported feeling better and that he had not taken his medications that day. (Tr. 270). Plaintiff was not short of breath at rest, but had an occasional wheeze. (*Id*.).

On June 26, 2006, Plaintiff was seen in the emergency room at Woodland Medical Center with complaints of hypertension, hyperglycemia, and dizziness. (Tr. 239). Plaintiff's blood pressure was 165/133 and his finger stick blood sugar was 150. (Tr. 238). A chest x-ray revealed "no acute chest process." (Tr. 240). Plaintiff was diagnosed with hypertension and COPD exacerbation. (Tr. 238).

Plaintiff returned for a recheck with Dr. Holloway on June 30, 2006. (Tr. 269). Plaintiff reported that he was feeling better since the hospital visit, but was still experiencing chest congestion and wheezing. (*Id*.). Dr. Holloway noted that the emergency room physicians did not find evidence of a myocardial infarction. (*Id*.). Plaintiff's lung sounds indicated diffuse wheezes, but he was not short of breath at rest. (*Id*.). Dr. Holloway prescribed a trial of Pamelor to be taken at bedtime. (*Id*.). On August 4, 2006, Plaintiff returned to the emergency room, stating that for the past three days he

had been feeling chest pain with generalized weakness, dizziness, and shortness of breath. (Tr. 234-35). The treating physicians diagnosed Plaintiff with acute exacerbation of COPD and chest pain. (Tr. 234).

On October 3, 2006, Plaintiff was seen as a new patient at the Good Samaritan Health Clinic. (Tr. 265). He complained of frequent urination, hernia problems, and insomnia. (*Id.*). Plaintiff reported smoking a half to one full pack of cigarettes per day, as well as a history of gout, arthritis, emphysema, COPD, hypertension, and diabetes mellitus. (*Id.*). Plaintiff also stated that he suffered a light myocardial infarction in 1995. (*Id.*). The treating physician prescribed Trazodone in place of Lunesta for Plaintiff's insomnia. (*Id.*). Plaintiff returned on October 10, 2006 complaining of fatigue, insomnia and hernia pain. (Tr. 263-64). He reported a blood sugar of 87 before supper and 140 after supper. (Tr. 264). The physical examination noted that Plaintiff had mild shortness of breath at rest and a ventral hernia. (*Id.*). His blood pressure was 137/94. (*Id.*). On October 24, 2006, Plaintiff returned to Good Samaritan for a follow-up. (Tr. 261). He again reported fatigue. (Tr. 262). Plaintiff's shortness of breath was described as mild. He was able to speak without any severe shortness of breath, but deep inspiration triggered coughing with coarse rhonchi throughout. (*Id.*). The diagnosis was COPD exacerbation, diabetes mellitus II, neuropathy, and insomnia. (Tr. 261).

Plaintiff returned to Good Samaritan two more times in 2007. (Tr. 279-82). On January 11, 2007, Plaintiff complained of fatigue and pain in his teeth. (Tr. 282). The physician diagnosed him with uncontrolled diabetes mellitus, COPD, and elevated triglycerides. (Tr. 281). On February 8, 2007, Plaintiff complained of pain in his sides, chest, legs, and shoulders. (Tr. 280). He again reported fatigue and told the doctor that he was "just getting over a cold." (*Id.*). Plaintiff also stated

that he was down to less than half a pack of cigarettes per day. (*Id*.). The physical examination showed Plaintiff to be mildly short of breath at rest and experiencing mild wheezing. (*Id*.). The physician's impressions were that Plaintiff suffered from (1) multiple arthralgias (joint pains)/myalgias (muscle pains); (2) uncontrolled diabetes mellitus; and (3) stable hypertension. (Tr. 279).

On March 29, 2007, Dr. Holloway completed a physical capacities evaluation, a clinical assessment of pain, and a clinical assessment of fatigue/weakness on Plaintiff. (Tr. 286-90). In the physical capacities evaluation, Dr. Holloway indicated that Plaintiff cannot lift/carry more than five pounds, sit for more than three hours per eight hour day, and stand for more than two hours per eight hour day. (Tr. 286). Dr. Holloway also indicated that Plaintiff could occasionally perform pushing and pulling movements, gross manipulation, and reaching movements; however, Plaintiff could never perform climbing, fine manipulation, bending, or stooping. (*Id*.). Further, Plaintiff was able to operate motor vehicles, but not work around hazardous machinery, dust, allergens, or fumes. (*Id*.). Dr. Holloway determined that Plaintiff experienced pain "to such an extent as to be distracting to adequate performance of daily activities or work." (Tr. 287). Moreover, physical activities such as walking, standing, bending, stooping, and moving of extremities increased Plaintiff's pain "to such a degree as to cause distraction from tasks or total abandonment of tasks." (*Id*.). Also, Plaintiff's pain medications were deemed severe enough to "limit [the] effectiveness [of work activity] due to distraction, inattention, drowsiness, etc." (Tr. 288). With regard to Plaintiff's fatigue and weakness, both were found "to be virtually incapacitating." (Tr. 289). As with pain, Dr. Holloway determined that physical activity would elevate Plaintiff's fatigue/weakness to a degree that would force him to

9

abandon tasks. (*Id*.). The side affects of the drugs for fatigue/weakness were also gauged as severe enough to limit the effectiveness of Plaintiff's work activity. (Tr. 290).

**II.   ALJ Decision**

Determination of disability proceeds under a five step analysis. 20 C.F.R. § 404.1520(a). First, the Commissioner determines if the claimant is engaged in substantial gainful activity. 20 C.F.R. § 1520(a)(4)(I). If the claimant is engaged in substantial gainful activity, he is not deemed to be disabled under the Act. *Id*. Second, the Commissioner determines if the claimant has a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. 1509. If the claimant does not possess such an impairment, he is not disabled. *Id*. Third, the Commissioner decides if the impairment meets or medically equals the criteria for an impairment listed in Appendix 1 of Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If it does not, the claimant is not disabled. *Id*. Fourth, the Commissioner determines whether the claimant possesses the RFC to do past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform past relevant work, he is not disabled. *Id*. Fifth, the Commissioner determines whether the claimant can perform other work in the national economy based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If he can perform other work, the claimant is not disabled. *Id*. If the claimant is deemed disabled or not disabled at any point in the process, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

The ALJ found that Plaintiff meets the insured status requirements of the Act through June 30, 2010, and that Plaintiff has not engaged in substantial gainful activity since May 16, 2005, the alleged onset date of disability. (Tr. 18). The ALJ also found that Plaintiff had the following severe impairments: COPD with emphysema, and diabetes mellitus. (Tr. 19). While these impairments

were found to be severe, the ALJ concluded that they did not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 22-23). The ALJ determined that Plaintiff possessed the RFC to perform less than a full range of light work, required a sit/stand option, and had to avoid being around unprotected heights or respiratory irritants. (Tr. 23). Further, Plaintiff could not perform any past relevant work, but due to his age, education, work experience and RFC, Plaintiff had skills transferrable to other jobs in the national economy. (Tr. 26). Thus, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 27).

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. (Doc. # 10, at 10). Specifically, Plaintiff contends that the ALJ erred in not crediting the opinion of the treating physician. (Doc. # 10, at 6-10).

### IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. Instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.   Discussion**

Plaintiff contends that the ALJ improperly disregarded the opinion of Dr. Holloway, Plaintiff's treating physician. (Doc. # 10, at 6-9). For the reasons below, the court agrees.

It is well settled that the "ALJ must clearly articulate the reasons for giving less weight to [the] opinions [of treating physicians]." *Miller v. Barnhart*, 182 Fed. Appx. 959 (11th Cir. 2006). "Absent good cause to the contrary, the Commissioner must accord substantial or considerable weight to the treating physician's opinion." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Good cause exists when (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (*citing Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). The ALJ determined that "Dr. Holloway's opinion [was] not consistent with his own medical treatment and findings, the objective medical evidence, or with the claimant's own testimony." (Tr. 25). Specifically, the ALJ found that Plaintiff "failed to follow his

doctors' treatment recommendations, and his impairments have been intermittent and sporadic in nature, and have been generally controlled with his medications when they have been taken as prescribed." (*Id*.). The ALJ based his finding on the following: (1) Plaintiff continued to smoke despite the persistent recommendations of his treating physicians; (2) Plaintiff reported on several occasions that he had not taken his medications; (3) on one occasion, Plaintiff admitted to not checking his blood sugar; (4) Plaintiff's finger stick glucose reading dropped from 365 to 199 once he resumed checking his levels; and (5) in 2007, Plaintiff exhibited only mild shortness of breath with mild wheezing. (*Id*.).

While the ALJ's opinion accurately cites the facts in the medical record, not all of the ALJ's findings are adequately supported by those facts. Plaintiff was repeatedly counseled by his doctors to give up smoking (Tr. 187, 194, 217, 265, 271, 272), which he did not do. (Tr. 318-19). At the hearing, Plaintiff reported smoking half a pack of cigarettes per day. (Tr. 333). On three occasions, Plaintiff stated that he had not taken his prescribed medications. (Tr. 222, 221, 270). On May 8, 2006, Plaintiff admitted that he had not been checking his blood sugar, and testing revealed that his blood sugar was 365. (Tr. 271). When Plaintiff returned two days later, his blood sugar was down to 199, and Plaintiff stated he was feeling better. (Tr. 270). Indeed, these facts constitute substantial evidence of Plaintiff's "fail[ure] to follow his doctor's treatment recommendations."

However, the facts do not amount to substantial evidence of the ALJ's key finding–that Plaintiff's ailments are "intermittent and sporadic in nature, and have been generally controlled with his medications when they have been taken as prescribed." Of the above-mentioned facts, only one directly supports the ALJ's finding–the decline in blood sugar that Plaintiff experienced after checking his blood glucose on May 8, 2006. The ALJ views that single instance of improved health,

coupled with unrelated episodes of noncompliance, as evidence that Plaintiff's ailments are generally within his control. This is too great an inferential leap and that finding is not supported by substantial evidence. Simply because Plaintiff's condition improved on a single occasion after he remedied his noncompliance does not mean that his impairments generally result from the noncompliance, as opposed to his underlying conditions.

On this record, there is simply nothing that contradicts Dr. Holloway's opinion.[1] While there obviously is some evidence of Plaintiff's noncompliance, that alone is insufficient to establish good cause to reject Dr. Holloway's opinion,[2] (which was based on more than Plaintiff's self-reported complaints).

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence. Therefore, the Commissioner's final decision is due to be reversed and remanded for an award of benefits. A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this ___14th___ day of September, 2009.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[1] The ALJ accorded "little weight" to Dr. Holloway's opinion solely on grounds of inconsistency between the record evidence and the opinion. (*See* Tr. 25).

[2] Nor is there anything else in the record to support the ALJ's decision to reject Dr. Holloway's opinion.